IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRIA WASHINGTON,
         Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,
         Defendant.

2:16-cv-0142-TFM

**MEMORANDUM OPINION**

Terria Washington ("Plaintiff") brings this action seeking judicial review of the final decision of the Acting Commissioner of Social Security, which denied her request for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381-1383f ("the Act"). Pending before the court are cross-motions for summary judgment filed by Plaintiff and the Acting Commissioner. (ECF Nos. 11, 13). The motions have been fully briefed and are ripe for disposition.

    **I. Background**

Plaintiff filed applications for DIB and SSI in August 2012, alleging disability as of October 15, 2011, due to anxiety and lower back pain, which she said prevented her from being able to bend and stand for long periods of time. (R. 217). Although Plaintiff testified that she worked after her alleged onset date, the ALJ found that such work didn't amount to substantial gainful activity. (R. 14). In June 2014, the ALJ issued a decision holding that Plaintiff was not disabled under the Act, and that decision became the final decision of the Acting Commissioner when the Appeals Council denied Plaintiff's request for review. This action followed.

Plaintiff's arguments focus on the ALJ's assessment (or lack thereof) of two opinions from medical sources, which she claims were more restrictive than the ALJ's residual functional

1

capacity ("RFC") assessment. In February 2012, Dr. Robert Hoffman, M.D., examined Plaintiff at the behest of the state agency and provided a medical source statement ("MSS") regarding her ability to perform work-related physical activities. Based on his review of Plaintiff's medical records and his own examination of her, Dr. Hoffman diagnosed Plaintiff with back pain of unclear etiology, evidenced by "structural abnormalities on her MRI," and peripheral neuropathy, though he noted that "[t]he findings [in support of this diagnosis] were limited on physical exam, other than decreased deep tendon flexes." (R. 415). In the accompanying MSS, Dr. Hoffman opined that Plaintiff could only lift and carry up to 10 pounds; stand and walk for one hour or less per workday; and sit for one hour per workday. This would mean that Plaintiff could not even perform the requirements of sedentary work under the Social Security Administration's regulations because sedentary work involves sitting most of the time. *See* 20 C.F.R. § 404.1567(a). Dr. Hoffman also opined that Plaintiff could never perform postural activities (bending, kneeling, stooping, crouching, balancing, and climbing) and could only occasionally perform manipulative activities due to her neuropathy.

Approximately one year later, Dr. James Carramanna, M.D., completed a physical RFC assessment of Plaintiff as part of the state agency's review of her claims. Dr. Carramanna opined that Plaintiff could occasionally lift and carry 10 pounds; frequently lift and carry less than 10 pounds; stand and walk for a total of two hours per workday; and sit for about six hours per workday. This essentially equates to a finding that Plaintiff was limited to performing sedentary work. *See* 20 C.F.R. § 404.1567(a) (explaining that "[s]edentary work involves lifting no more than 10 pounds at a time," "occasionally lifting or carrying articles like docket files, ledgers, and small tools" and occasional walking and standing). In addition, according to Dr. Carramanna, Plaintiff could occasionally perform all postural activities except climbing ladders, ropes, and

2

scaffolds, which in his view, she could never do.

In his decision, the ALJ found that Plaintiff retained the RFC to perform light work,[1] but he also found that "she is limited to a sit/stand option and simple, routine repetitive tasks with no contact with the public." (R. 16). In reaching that finding, the ALJ explained that he considered Dr. Hoffman's opinions but accorded them "little weight for several reasons." (R. 20). In particular, the ALJ concluded,

> The doctor statements are quite conclusory, providing very little explanation of the evidence relied on in forming those opinions. It is noted that the doctor interviewed the claimant on only one occasion and does not have an established treatment history with the client. The objective medical evidence shows only mild root impingement with some decreased range of motion on clinical examinations. In addition, the claimant receives only conservative treatment. It appears that the doctor relied quite heavily on the subjective report of symptoms and limitations provided by the claimant. Moreover, the doctor's opinion is without substantial support from the other evidence of record and contrasts sharply with the other evidence of record, which renders it less persuasive.

(R. 20). On the other hand, the ALJ explained, "it fully appears that the State Agency Medical consultant determinations that clinical findings fail to support significant functional limitations preclusive of all substantial gainful activity are substantiated by the record as a whole." (R. 21). Thus, the ALJ stated that he gave "significant weight to the opinion of the State Agency Medical Consultant," while at the same time noting that he had actually "given a more restrictive residual functional capacity than that postulated by the State Agency." (R. 21).

---

1. According to 20 C.F.R. § 404.1567:

   Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Plaintiff advances two primary arguments as to why the ALJ erred in assessing these two medical opinions.[2] First, she claims that the ALJ did not provide valid reasons for "rejecting" Dr. Hoffman's opinions. Second, she claims that the ALJ "completely ignored" Dr. Carramanna's opinion, "provid[ing] no explanation whatsoever why he did not credit this opinion, or why he did not offer a sedentary hypothetical to the vocational expert[.]" Pl.'s Br. at 13.

**II. Discussion**

A district court's "review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla but less than a preponderance of the evidence. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

To decide whether a claimant is disabled under the Act, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920. This requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her

---

2. Plaintiff also contends that this case should be remanded because the ALJ failed to "actually pose a specific hypothetical question" to the VE and instead "allowed the [VE] to create her own hypothetical and answer it." *Id.* at 16-17. This argument is based on the fact that a portion of the record where the ALJ questioned the VE was deemed "inaudible" in the transcript. (R. 48). It seems clear, however, that in the inaudible portion of the record, the ALJ asked a hypothetical question to the VE that reflected the RFC he set forth in his written decision. In fact, he said as much in his decision. (R. 22) (explaining that the ALJ "asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]"). Thus, the Court does not find that the ALJ improperly deferred the assessment of Plaintiff's RFC to the VE, and remand is not warranted on this basis. *See Thibodaux v. Astrue*, No. CIV.A. 11-165, 2012 WL 1033629, at *11 (E.D. La. Mar. 8, 2012) (declining to remand where "printed transcript of [the ALJ's] hypothetical question to [the VE] contain[ed] sufficient information to indicate that the question matched the [RFC] stated in his written opinion").

past relevant work, and (5) if not, whether she can nonetheless perform other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003).

Only the fifth step is at issue here. As already noted, the ALJ determined that Plaintiff could perform light work involving simple, routine repetitive tasks with a sit/stand option and no contact with the public. He then posed a hypothetical question to the VE based on this RFC, and in response, the VE testified that someone in Plaintiff's position could work as a sorter, marker, and electronic worker. Relying on that testimony, the ALJ held that Plaintiff was not disabled.

According to Plaintiff, the ALJ should have adopted the more restrictive RFC assessment provided by Dr. Hoffman − or, in the least, given better reasons for assigning "little weight" to his assessment − which would have precluded Plaintiff from even being able to perform sedentary work. The Court agrees that the ALJ's discussion of Dr. Hoffman's opinion leaves much to be desired. For starters, although the nature of a doctor's relationship with the claimant is certainly relevant when assessing that doctor's opinion, the fact that Dr. Hoffman had only examined Plaintiff on "one occasion and [did] not have an established treatment history with" her was not, by itself, a valid reason for disqualifying Dr. Hoffman's assessment − especially since the ALJ purportedly accorded "significant weight" to the opinion of the "State Agency Medical Consultant," who had *never* examined Plaintiff and who based his opinion, in part, on Dr. Hoffman's. *Cf. Gross v. Comm'r Soc. Sec.*, No. 15-2764, 2016 WL 3553259, at *5 n.10 (3d Cir. June 30, 2016) ("Where both doctors are consultative physicians, this fact alone cannot provide basis for distinguishing between the two."). The ALJ's remaining reasons for discounting Dr. Hoffman's report are similarly lacking. The objective medical evidence, for example, did not just show "minor root impingement," as the ALJ remarked. Other "structural

5

abnormalities" were also observed. And at any rate, even if Plaintiff's MRI did show "only minor root impingement," the ALJ had no medically supported basis to conclude that an MRI showing "only minor root impingement" was inconsistent with Plaintiff's claims about the disabling nature of her back pain. Moreover, although the ALJ said that Dr. Hoffman's assessment "contrasts sharply" with the other evidence in the record, he never actually pointed out any evidence that undermined Dr. Hoffman's report. This is troubling because there was not a surplus of other evidence in the record with which Dr. Hoffman's opinion could have conflicted. There was not much in the way of objective evidence, for example, and none of Plaintiff's treating doctors offered an opinion as to her physical condition. The only other doctor who did so was the state agency physician, Dr. Carramanna (about whom more will be said in a moment), who opined that Plaintiff was limited to sedentary work with various other limitations. True, Dr. Hoffman did offer a bleaker assessment of Plaintiff's condition than Dr. Carramanna. But their opinions did not "contrast sharply," and contrary to what the ALJ ultimately concluded, both doctors felt that Plaintiff was limited to less than light work. In fact, although he parted ways with Dr. Hoffman regarding Plaintiff's ability to perform all the requirements of sedentary work and to occasionally perform postural activities (as opposed to never being able to perform them), Dr. Carramanna noted that he found Dr. Hoffman's observations to be "partially consistent" with the other evidence of record and gave them "appropriate weight" in his RFC assessment. (R. 72).

All of that, on its own, is enough to require the Court to remand this case to the ALJ for further proceedings. But there is more: Dr. Carramanna's opinion must also be given a second look. As Plaintiff points out, it is not entirely clear how – or even whether – the ALJ considered Dr. Carramanna's assessment in his analysis the first time around, even though opinions from

6

state agency physicians are supposed to be given "significant consideration." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ never mentions Dr. Carramanna by name in his decision; he only refers to an unnamed "State Agency Medical Consultant." And in the portion of his opinion discussing the opinion of the "State Agency Medical Consultant," the ALJ cites to Exhibit 13F, which is a statement from Plaintiff's social worker at Cove Forge Behavioral Health. Dr. Carramanna's RFC assessment, however, is found in Exhibit 4A.

Nevertheless, the Court will assume that the ALJ was actually referring to Dr. Carramanna and not someone else. (Since there were no other state agency medical consultants who reviewed Plaintiff's file, it is likely that was the case.) Even so, there are unexplained gaps in the ALJ's reasoning that require clarification on remand. Although the ALJ purported to have given "significant weight" to the determinations of the "State Agency Medical Consultant" (again, he presumably meant Dr. Carramanna) and even went so far as to say that he was adopting a *more restrictive* RFC assessment than the state agency, in reality, he did no such thing. The ALJ's RFC assessment was actually *less restrictive* than Dr. Carramanna's. Whereas Dr. Carramanna opined that Plaintiff could only work at the sedentary level, the ALJ found that she could perform light work. And whereas Dr. Carramanna felt that Plaintiff could only occasionally perform postural activities, the ALJ didn't include any postural limitations in his RFC assessment. Yet the ALJ failed to even acknowledge the discrepancy, let alone provide a rational explanation for why he adopted some of the limitations identified by Dr. Carramanna but not others. Because the three jobs identified by the VE all required the capacity to perform light work, the Court is left to wonder what effect, if any, these additional limitations would have had on Plaintiff's ability to perform work that exists in the national economy.

To be sure, the ALJ was not required to adopt Dr. Carramanna's opinions wholesale. He could have adopted some portions of Dr. Carramanna's assessment and rejected others, as it was ultimately up to him to decide Plaintiff's RFC. *Cf.* S.S.R. 96–5p, 1996 WL 374183, at *4 (July 2, 1996) ("Adjudicators must remember, however, that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one."). Before doing so, however, he had to have provided some explanation for why he was not adopting the more restrictive portions of Dr. Carramanna's assessment. *See* S.S.R. 96–8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Absent that, the Court cannot say whether the ALJ failed to incorporate these limitations into his RFC for "no reason or the wrong reason."[3] *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

This lack of clarity must be addressed on remand. In particular, the ALJ should consider the additional limitations set forth in Dr. Carramanna's RFC assessment – the restriction to sedentary work and also the limitations on postural activities – and either incorporate them into his RFC assessment and the hypothetical he poses to the VE or explain why he is not adopting them. *See Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *2 (W.D. Pa. Sept. 23, 2014) (remanding case where the ALJ gave substantial weight to non-examining agency consultant's

---

3. Nor can the Court say that this error was harmless. There is nothing in the record to suggest that the outcome would have been the same had the ALJ limited Plaintiff to sedentary work with a sit-stand option. The three jobs identified by the VE were each considered light work. Although it is possible that there are sedentary jobs that can be performed with a sit-stand option, this Court is in no position to make such a finding. Instead, if on remand the ALJ limits Plaintiff to sedentary work with a sit-stand option, he will have to consult a VE to determine whether work still exists in significant numbers in the national economy that Plaintiff can perform.

opinion, but did not include all of the limitations expressed by the consultant in his RFC assessment); *Carole v. Colvin*, No. 14-1501, 2015 WL 4162446, at *3 (W.D. Pa. July 9, 2015) (remanding case in which "it [was] uncertain why the ALJ chose to incorporate certain limitations" in a medical source statement "and not others").

Finally, although not raised by Plaintiff, the Court finds that two other aspects of the ALJ's decision are unsupported by substantial evidence and require reconsideration on remand. First, the ALJ noted that Plaintiff reported to the state agency that she can "ride in a car, use public transportation, watch television, crochet, spend time with others, play board games, play cards, go out with family and friends, occasionally attend church, manage her finances and independently care for her personal needs." (R. 20). The ALJ then went on to conclude that "[s]uch an array of activities is indicative of a greater level of functioning than that described by the Plaintiff." (R. 20). The Court fails to see how that is so. Not only did the ALJ ignore that Plaintiff said in the function report that she could only sporadically perform those activities – and that she struggles with a number of other activities and rarely leaves her house except for medical appointments – but, also, those activities do not necessarily even suggest that Plaintiff "can work on a regular and continuing basis, eight-hours a day, five days a week," *Burns v. Colvin*, 156 F. Supp. 3d 579, 597 (M.D. Pa. 2016) (citations omitted). Nor are they inconsistent with the more restrictive assessments of Plaintiff's impairments offered by Dr. Hoffman and Dr. Carramanna – or, for that matter, with Plaintiff's own description of her condition. As the Court of Appeals long ago recognized, "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981).

Second, the ALJ found that Plaintiff's attempts to work after her alleged onset date

"indicate[d] that [her] daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (R. 20). Plaintiff testified, however, that although she did attempt to work after her alleged onset date (apparently at a factory, a McDonald's, and possibly another place of employment, in addition to having tried to provide home care for her elderly mother) she had to leave those jobs after relatively short periods of time because of her back condition. (R. 33-35). "It does not follow from the fact that a claimant tried to work for a short period of time and, because of [her] impairments, failed, that [she] did not then experience pain and limitations severe enough to preclude [her] from maintaining substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1037 (9th Cir. 2007). In fact, "evidence that a claimant tried to work and failed" might actually support a claimant's "allegations of disabling pain." *Id.* (citation omitted). To be sure, had there been evidence that Plaintiff was able to perform specific tasks when she attempted to go back to work, such evidence might have belied her claims that she was totally disabled and showed that she had the capacity to do more than she let on. However, there was no evidence in the record as to the types of activities that Plaintiff was actually able to undertake when she attempted to work. Thus, the Court finds that it was not appropriate for the ALJ to rely on Plaintiff's attempts to work to undermine her credibility.

### III. Conclusion

For these reasons, the Court will **GRANT** the Motion for Summary Judgment filed by the Plaintiff insofar as it requests that the case be remanded to the ALJ for further proceedings, and **DENY** the Motion for Summary Judgment filed by the Acting Commissioner. An appropriate Order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | )|
|---|---|
|**TERRIA WASHINGTON,** | )|
|Plaintiff, | )|
| | )|
|v. | ) 2:16-cv-0142-TFM|
| | )|
|**CAROLYN W. COLVIN,** | )|
|Acting Commissioner of | )|
|Social Security, | )|
|Defendant. | )|

# ORDER

**AND NOW**, this 13th day of September, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff's MOTION FOR SUMMARY JUDGMENT (ECF No. 11) is **GRANTED** insofar as it requests that the case be remanded to the ALJ for further proceedings, and the Acting Commissioner's MOTION FOR SUMMARY JUDGMENT (ECF No. 13) is **DENIED**. It is further **ORDERED** that this case is remanded to the ALJ for further proceedings in accordance with 42 U.S.C. § 405(g).

The Clerk of Court shall docket this case **CLOSED**.

BY THE COURT:

s/ Terrence F. McVerry
Senior United States District Judge

cc: **Kenneth R. Hiller, Esq.**
Email: khiller@kennethhiller.com

**Colin Callahan, Esq.**
Email: colin.callahan@usdoj.gov

(via CM/ECF)